**CONVERSE RUBBER CO. v. BOSTON–CONTINENTAL NAT. BANK et al.**

**No. 3167.**

Circuit Court of Appeals, First Circuit.

Dec. 18, 1936.

Israel Gorovitz, of Boston, Mass. (Harry E. Burroughs, of Boston, Mass., on the brief), for appellant.

Murray F. Hall, of Boston, Mass. (Donald J. Hurley and Goodwin, Procter & Hoar, all of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge (after stating the facts as above).

In disposing the claim of the plaintiff against the Federal Reserve Bank, the District Court pointed out that that bank received the plaintiff's check from the First National Bank for collection; that it acted only as agent for the forwarding bank; that any checks not actually and finally paid were to be charged back to the forwarding bank; that the check in question was not paid in actually and finally collected funds; and that, under the terms of the agreement between the Continental Bank and the Reserve Bank, the Continental Bank had an unconditional right to return any check drawn upon it and receive a credit on its reserve account in the Reserve Bank. It further found that the crediting of the check to the First National Bank and the debiting of it to the reserve account of the Continental was provisional only and the Reserve Bank as the holder of the check acquired no rights against the Continental Bank; and that,

since the Reserve Bank had acquired no right to have the check paid and it was not in fact collected, the Reserve Bank could not be held accountable to the plaintiff for the amount of it.

There can be no doubt that the credit given to the First National Bank as well as the debit charged to the Continental Bank upon receipt of the check was a provisional or conditional credit and debit under the terms of the agreements between the banks, and that the credit would become absolute only upon the check being paid in actually and finally collected funds, which never occurred. The credit given to the First National being provisional only and subject to · the right of the Reserve Bank to cancel it at any time before collection of the check, which was the situation here, the plaintiff acquired no property right in such credit and, by its authorized cancellation, it suffered no loss. As the plaintiff had no property right in the provisional credit and its cancellation was authorized, then certainly there was no property or property right that was lost by the cancellation of the credit to which a constructive trust ex maleficio could attach. The Reserve Bank in cancelling the credit or charging back the check to the First National account committed no wrong, fraudulent or otherwise, and, unless the plaintiff had a property right in the conditional credit which it lost through a wrongful act of the Reserve Bank, no constructive trust arose in favor of the plaintiff in the conditional credit to the First National which was canceled and credited to the reserve account of the Continental.

The Reserve Bank, on return of the check to it, canceled the credit to the First National and gave credit for its amount ($50,000) to the reserve account of the Continental, because the check was returned to it dishonored and had not been paid in "actually and finally" collected funds, and not because the memorandum that accompanied the check on its return to the Reserve Bank from the Continental Bank stated that the check had been recalled.

The plaintiff seems to think, and argues in its brief, that the great preponderance of the evidence in the case shows that the check had been paid; that the Continental "had specifically agreed with the Reserve Bank that the entry of a debit to its reserve account should constitute payment at the time of delivery of the item [check] to the representative of the appellee bank." In support of this it calls attention to the letter of the Continental Bank to the Reserve Bank of December 27, 1930 (Defendants' Exhibit 5), wherein the Continental Bank agreed to call at the office of the Reserve Bank at a particular hour for all items payable by it and deposited with the Reserve Bank for collection, and the further provision wherein it agreed to consider items so delivered to the Continental's representative as having been presented for payment over its counter at the time of such delivery; and also to the clause in the letter wherein the Continental authorized the Reserve Bank to charge its account with the gross amount of such items. But it leaves out and fails to call attention to the further provision in the letter wherein it was stipulated that the Continental Bank should have the right to return to the Reserve Bank "all dishonored items not later than 1:30 on all week days," and thereupon the Reserve Bank should credit the Continental's reserve account with the amount of all such dishonored items. All of which goes to show that not only the credit given the First National on the receipt of the check by the Reserve Bank was tentative, but that the charge made of the check to the reserve account of the Continental was likewise tentative, and, the check having been returned by the Continental to the Reserve Bank dishonored, the Reserve Bank was bound by its agreement to credit the amount of it back to the reserve account of the Continental; and, the Reserve Bank having reserved the right, as against the First National, to charge back to its account "the amount of any check for which payment in actually and finally collected funds is not received," it is idle to argue that the check was paid by the tentative credit and charge to the respective banks, or that the plaintiff had a property right in the credit.

But, if it could be said that the plaintiff had a property right in the credit and that was a res to which a trust could attach, and that, due to a false representation by the Continental Bank, the plaintiff lost its credit to the Continental Bank by its being credited to the reserve account of the latter in the Reserve Bank, the facts in this case show that the fund represented by the credit thus given the Continental Bank never reached the hands of the Comptroller

or receiver, for the reserve account to which it was credited was later on that day exhausted and remained exhausted to the close of business on December 16, 1931, after which the Continental Bank never opened. The reserve account to which the check for $50,000 was credited having been exhausted, the fund in that account, which included the check, could not be traced into the hands of the comptroller on the following day or thereafter into the hands of the receiver.

It appears that other checks in favor of the Continental Bank were in the hands of the Reserve Bank for collection and were in process of collection by that bank on December 16, 1931. But the funds later realized from those checks were not a part of the reserve account on December 16, 1931, and no trust could attach to them; and, the reserve account, to which the check was credited, having been exhausted at the close of business on December 16, no funds from that account, as it then existed, could have been later used to redeem the securities pledged by the Continental Bank to the Reserve Bank to secure the former's loan of $1,010,000, and no trust could attach to these securities as having been obtained by the receiver through the use of the fund representing the check.

We therefore conclude that the District Court did not err in holding that no trust for the benefit of the plaintiff was imposed on the assets of the Continental Bank that came into the hands of the receiver and that the plaintiff stands as a general creditor.

The decree of the District Court is affirmed, with costs to the appellees.